PRICE, Judge.
This appeal concerns the authority of a wife to act as a mandatary for her husband in the execution of a contract to buy and sell an advance cotton crop.
The pertinent factual' background and contentions of the parties are concisely set forth in the trial judge’s reasons for judgment as follows:
“Petitioner, John Knox Nunn, Jr., seeks judgment declaring a certain instrument dated January 24, 1973 to be null and void and of no effect. The act in question purports to be a contract for the sale of plaintiff’s 1973 cotton crop to the defendant, W. H. Kennedy & Son, Inc. Mr. Nunn contends in his petition that he did not sign the instrument, that the signature thereon was affixed without his knowledge or consent, and that the particular acreage from which the cotton was to be produced is not described therein. Defendant contends the agreement is valid and binding, and reconvenes for specific performance.
“It was stipulated by the parties that plaintiff did not sign the instrument, but that his name, ‘John K. Nunn, Jr.’, was signed thereon by his late wife, Mrs. Annie Sue Nunn. Prior to her death on July 17, 1973, the Nunns lived in community for over 22 years.
“The record reveals that the Nunns presold their 1971 and 1972 cotton crops on contract with defendant. At their home in late December 1972 and early January 1973, Louis Conner Morschhei-mer, Jr., a representative of Kennedy, discussed with both Mr. and Mrs. Nunn together the purchase of their 1973 crop. An offer of 29 cents per pound was made to them, which they decided to discuss further between themselves. If they decided to sell, the Nunns were to notify Morschheimer through Shackel-ford’s Gin, located in their community. For reasons of convenience, it was a common local practice for farmers and cotton buyers to contact one another through this gin.
“On one of his subsequent visits, Morschheimer found at the gin a form contract which had been signed and was told by ‘someone’ there that the Nunns had decided to take this offer. When he received the contract, it reflected the same price per pound that had been offered to the Nunns, the figure ‘500’ had been written in the blank space provided for the number of acres of cotton sold, and the grade and micronaire specifications were shown thereon. The instrument had also been previously, dated ‘January 24, 1973’, which was approximately the same point in time the buyer received it. Morschheimer signed the contract, left a copy for the Nunns at the gin, and took the original with him.
“The cotton was quickly sold by the defendant to a textile mill.
*847 “After the cotton was planted, the defendant secured from the local Agricultural Stabilization and Conservation Office the actual number of acres planted and plaintiff’s farm serial number. Both figures were then written on the original contract and ‘Morehouse’ was shown as the location. This was not an uncommon practice.
“Morschheimer attended Mrs. Nunn’s funeral in July; however, the defendant concern had no other contact with the Nunns until August 27, 1973, when an attorney’s letter advised that Mr. Nunn was repudiating the contract. This suit was instituted on November 2,1973.”
After trial on the merits the district court concluded the evidence was sufficient to establish that Mrs. Nunn was acting as an agent for the community when she signed the contract and that plaintiff either authorized or ratified the contract by acquiescence. The court found the absence of a specific legal description of the acreage in the contract was immaterial as the parties had a meeting of the minds in this regard which is sufficient to sustain the validity of the contract. This question is apparently not made an issue on this appeal. The court awarded defendant judgment on its reconventional demand, ordering specific performance by plaintiff of its obligation to deliver the cotton sold under the contract.
We find no manifest error in the trial court’s finding and affirm the judgment.
On this appeal by plaintiff the specifications of error are limited to the following:
1. The trial court erred in admitting into the record evidence tending to establish Mrs. Nunn had general administrative authority over the farming operation to prove an express agency to sell and in finding this evidence sufficient to establish such authority.
2. The court further erred in allowing any evidence to show ratification by acquiesence in the absence of the pleading of defendant of this affirmative defense.
From our review of the record we find the testimony of the plaintiff on trial and in pre-trial discovery deposition, is sufficient to establish that his wife was authorized to act for him, and it is unnecessary to pass on or discuss the admissibility or sufficiency of evidence relating to ratification.
Plaintiff cites La.C.C. Articles 2996 and 2997 in support of his contention that the evidence is insufficient to establish Mrs. Nunn’s authority in that under these articles authority to sell must be both express and special.
In Resweber v. Daspit, 240 So.2d 376 (La.App. 3rd Cir. 1970), the court resolved an apparent conflict between the requirements of Article 2996 requiring only express authority to perform acts of ownership, with the provisions of Article 2997 requiring the power to sell be both express and special. The court concluded the power to sell must be express only.
There is no requirement that the authority to act as agent to sell a movable be in writing.
We think the evidence showing the pattern of acts of administration performed by Mrs. Nunn in the past for the community at the direction or under the authority of her husband is admissible to show she was given express authority to bind the community in sales and mortgages of crops and other movable property.
Evidence of general administrative acts standing alone may not be sufficient to prove express authority, but this is not to say it should not be admitted to be considered and weighed with other credible evidence offered by defendant in carrying out its burden of proving its case by a preponderance of the evidence.
The record shows that for a number of years Mrs. Nunn had transacted most if *848 not all of the financial affairs for her husband’s farm. She customarily signed all documents required by the Agricultural Stabilization and Conservation Service in participating in their programs, including the sale and mortgaging of cotton in her husband’s name. Checks in payment of all purchases were signed by Mrs. Nunn, and she bought and mortgaged farm equipment for the community. Her management of the administrative affairs was very extensive and complete according to the testimony in the record.
Plaintiff testified that his relationship with his wife in the management of their farm was very close and that to his knowledge his wife had never done anything concerning the business without his knowledge, approval and agreement.
Although the plaintiff did not specifically admit he authorized his wife to sign the contract to sell, neither would he specifically deny that he had done so.
He testified that he did not believe his wife would have signed without his having given her the authority, although he contends he does not have any definite recollection of the event. He further admits having discussed the matter with her at a time just prior to the date of the contract and again after the execution of the instrument and the sudden rise in the price of cotton in the spring of 1973. Plaintiff admits that had the price of cotton dropped instead of dramatically increasing, he would not have sought to repudiate the contract.
It is also significant that plaintiff did not take steps to revoke the agreement until after the death of his wife in July, 1973. Plaintiff is now the only person living who knows the true facts concerning the question at issue. His evasion of a direct answer to the questions of whether he gave his wife authority to act on his behalf must be construed against him.
We believe a fair evaluation of plaintiff’s testimony when weighed in relation to the other evidence and the prevailing circumstances can only be reasonably interpreted as admitting he agreed to his wife’s execution of the contract. Under the circumstances presented, we consider this to be sufficient authorization to bind plaintiff to the contract.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s costs.